IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| REGINALD D. HOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 110-108 |
| | ) | |
| FNU SMITH, Lieutenant; FNU FOWLER, | ) | |
| Lieutenant; FNU ADKINS, Officer; FNU | ) | |
| SWEAT, Officer; and FNU JAMISON, | ) | |
| Officer, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently incarcerated at the Atlanta Transitional Center in Atlanta, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C.

---

[1] As explained below, Plaintiff was an inmate at Augusta State Medical Prison ("ASMP") at the time of the events giving rise to this case. (Doc. no. 1, p. 3.)

§§ 1915(e) & 1915A.[2]

I. **BACKGROUND**

Plaintiff names the following Defendants in his complaint, all of whom are correctional officers at ASMP: (1) Lieutenant Smith, (2) Lieutenant Fowler, (3) Officer Adkins, (4) Officer Sweat; and (5) Officer Jamison. (Doc. no. 1, pp. 1-2.)

Plaintiff alleges that on July 25, 2010, while incarcerated at ASMP, Defendant Adkins handcuffed him and escorted him to the prison pay phone to make a call. (Id. at 6.) According to Plaintiff, he protested when Defendant Adkins began dragging Plaintiff while escorting him back to his cell. (Id.) Plaintiff asserts that Defendant Adkins responded to Plaintiff's complaining by threatening harm. (Id.) Plaintiff alleges that once he was secured inside his cell, Defendant Adkins "snatched" his arms through the door flap to take off his handcuffs, which prompted Plaintiff to "snatch" his arms back inside. (Id.) Plaintiff maintains that Defendants Adkins and Sweat then removed Plaintiff's handcuffs, left, and returned to his cell a few moments later accompanied by Defendants Smith, Fowler, and Jamison. (Id.) Plaintiff avers that all Defendants proceeded to enter his cell and assault him, punching and kicking him numerous times. (Id.) Plaintiff states that following the assault, he was subjected to further abusive conduct as he was escorted to the medical department, with Defendant Jamison tripping him and striking him with his knee. (Id. at 6-7.) Plaintiff alleges that as a result of this incident, he suffered a "dislocated shoulder, busted lip, swollen

---

[2]Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

2

left hand, and bruised back." (Id. at 7.) For relief, Plaintiff seeks compensation for his "cruel and unusual punishment," pain, suffering, and "mental damage," as well as a "surcharge."[3]

Plaintiff states that on July 26, 2010, the day after the alleged assault, he submitted a grievance to a prison counselor, along with witness statements; he further states that his grievance was received by the warden and that the matter was forwarded to "internal affairs" for an investigation. (Id. at 4-5, 7.) On the same day, Plaintiff executed his complaint, which was filed approximately two and a half weeks later on August 12, 2010. (Id. at 1, 6.)

## II. DISCUSSION

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002) (finding exhaustion requirement applicable to inmate's excessive force claim). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or

---

[3]The Court presumes that Plaintiff's request for a "surcharge" is an inadvertent error, and that he means to request a discharge – i.e., release from confinement. While the Court's conclusions below make it unnecessary to engage in a detailed analysis of the relief sought, it is worth noting that release from confinement is not available as a remedy in a § 1983 action. See Gwin v. Snow, 870 F.2d 616, 621 (11th Cir. 1989) ("[A] prisoner seeking injunctive relief which lessens the period of confinement must bring the claim in a habeas corpus petition. In contrast, individuals seeking damages claims or injunctive relief to prospectively enjoin unconstitutional procedures can use section 1983 . . . .").

3

inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 F. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.

Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "there is the possibility of at least some kind of relief." Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. §§ VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has 30 calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has

90 calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2) & (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

In addition to this grievance procedure, the Department of Corrections' Standard Operating Procedures provide for the review of certain matters, such as the use of force against an inmate, by the Internal Investigations Section. See generally SOP IK01-0001 *et seq.* While an inmate grievance may be referred to the Internal Investigations Section, such a referral does not terminate the grievance process; rather, grievances are handled pursuant to SOP IIB05-0001, as explained above, and internal investigations are handled separately pursuant to SOP IK01-0001 *et seq.*

Here, it is apparent from Plaintiff's complaint that he did not exhaust his administrative remedies prior to the commencement this case, as is required under the PLRA. Plaintiff signed his complaint one day after the events alleged, and filed it less than two and a half weeks later. When asked about appealing any adverse decision, Plaintiff states only that he was told that the matter had been referred for an internal investigation. However, as explained above, the warden's response that Plaintiff's grievance would be referred to the Internal Investigations Section was not the end of the grievance procedure. To satisfy the PLRA's exhaustion requirement, Plaintiff would have needed not only to have received a response from the warden as to the grievance he submitted, but, in the event of an unfavorable decision, he would have also had to appeal the warden's decision to the Office of the Commissioner, which would have an addition 90 days to decide his appeal. SOP IIB05-0001 § VI(D)(5).

Moreover, it is apparent from the relief requested by Plaintiff in his complaint – which includes, *inter alia*, monetary damages – that Plaintiff wanted some other action from the warden other than a referral to an internal investigatory body. However, relevant case law makes clear that even where the available administrative remedies do not offer the relief Plaintiff seeks, he must exhaust those administrative remedies prior to filing a lawsuit. See Booth v. Churner, 532 U.S. 731, 741 (2001); Alexander, 159 F.3d at 1328. Upon receiving the warden's response that Plaintiff's allegations would be passed on to the Internal Investigations Section, Plaintiff did nothing more; he neither awaited resolution of his grievance by the warden aside from this referral, nor requested further action from the Office of the Commissioner, as was his option under the applicable SOP. Therefore, Plaintiff failed to exhaust the administrative grievance procedure prior to commencing this case.

In sum, it is apparent from the face of Plaintiff's complaint that he has not completed the requisite steps necessary to exhaust his administrative remedies, and that his claims are not properly before this court. Because the PLRA requires exhaustion <u>before</u> filing a complaint in federal court, and does not allow exhaustion while a case is pending, see Higginbottom, 223 F.3d at 1261, Plaintiff has failed to satisfy the PLRA's exhaustion requirement. As a result, Plaintiff's complaint should be dismissed without prejudice.[4]

---

[4] The Court recognizes that the Supreme Court recently held that under the PLRA, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 14; see also Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust

7

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 30th day of December, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

his administrative remedies, the Court can properly recommend that Plaintiff's complaint be dismissed. See Anderson v. Donald, Civil Case No. 06-16322 (11th Cir. Jan. 8, 2008) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that Plaintiff failed to exhaust his administrative remedies).

8